UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO: 14–13** |
| **TIMOTHY MONAHAN** | **SECTION: "H"(2)** |

### ORDER AND REASONS

Before the Court is a Motion to Transfer Venue. (R. Doc. 20.)  For the following reasons, the Motion is DENIED.

### BACKGROUND[1]

On January 24, 2014, a federal grand jury in the Eastern District of Louisiana returned a six-count indictment charging Defendant Timothy Monahan ("Monahan") with wire fraud and

---

[1] The following facts are drawn from the indictment in this case.  Neither party has requested an evidentiary hearing.

1

conspiracy to commit wire fraud.  The charges stem from alleged misconduct related to a land development project.  The indictment charges that in or about late 2008, Monahan's business associate and alleged co-conspirator "M.H." sought approximately $3,000,000 in financing for the acquisition and development of a five-acre tract of land (the "Land") in Covington, Louisiana.  M.H. successfully recruited Bolivar Investors Group, LLC ("Bolivar")—a limited liability company organized under Louisiana law—as an investor.  Monahan, M.H., Bolivar, and others subsequently formed Newtrack West, LLC ("Newtrac") to facilitate the purchase and development of the Land.

In or about January 2009, Monahan opened a bank account under Newtrac's name with Citibank, N.A. ("Citibank") in San Diego, California.  Between on or about January 20, 2009 and July 14, 2009, Bolivar transferred approximately $3,000,000 from the Eastern District of Louisiana to Newtrac's account in San Diego.  The transfers occurred in six installments: one check and five wire transfers.

Despite representing to Bolivar that the money transferred would be used facilitate the land development project, the indictment alleges Monahan converted funds in excess of $550,000 from the Newtrac account for his own personal use.  In order to conceal this fraudulent activity, Monahan and M.H. allegedly manipulated financial and bank statements, which were then forwarded to Bolivar.

**LAW AND ANALYSIS**

Monahan moves this Court under Rule 21(b) to transfer the above-captioned matter to the Southern District of California. The United States Constitution provides that "[t]he Trial of All Crimes . . . shall be held in the State where the said Crimes shall have been committed." U.S. Const. art III, § 2, cl. 3; *see also id.* at amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed."). But this command is not inviolate. Upon motion of the defendant, Rule 21(b) of the Federal Rules of Criminal Procedure allows the trial court to transfer a criminal proceeding to another district "for the convenience of the parties, any victim, and the witnesses, and in the interest of justice."

There is no general rule that a prosecution should continue where it was commenced, and the defendant need not establish "truly compelling circumstances" in order to warrant transfer. 2 Wright, Leipold, Henning, & Welling, *Federal Practice and Procedure*, § 45 (4th ed. 2013).[2] "It is enough if, all relevant things considered, the case would be better off transferred to another district." *In re Balsimo*, 68 F.3d 185, 187 (7th Cir. 1995). The defendant bears the burden of proof. *United States v. Romans*, No. 4:11–CR–127, 2012 WL 3647849, at *1 (E.D. Tex. Aug. 7, 2012). The trial court has broad discretion in determining whether a defendant has carried this burden. Fed.

---

[2] *But see United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 464 (S.D. N.Y. 1997) (acknowledging a "general presumption that a criminal prosecution should be retained in the original district.") (internal quotation marks omitted).

R. Crim. P. 21 advisory committee's note; *United States v. Noland*, 495 F.2d 529, 534 (5th Cir. 1974).

In *Platt v. Minnesota Mining & Manufacturing*, the Supreme Court identified ten factors a court should consider when ruling on a Rule 21(b) motion:

> (1) location of corporate defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.

376 U.S. 240, 243–44 (1964).  Although *Platt* involved the prosecution of a corporate defendant and was issued prior to the 1966 amendment of Rule 21, courts continue to apply the factors enumerated to non-corporate defendants.  *United States v. Boyer*, No: 4:08cr1DPJ–JCS, 2008 WL 4104482, at *2 (S.D. Miss. Aug. 28, 2008) (citing 2 Wright, Leipold, Henning, & Welling, *Federal Practice and Procedure*, § 45 (4th ed. 2013)).  None of the *Platt* factors is dispositive, and the Court may emphasize certain factors over others.  *See United States v. Malonado–Rivera*, 922 F.2d 934, 966 (2d Cir. 1990).  The court now applies the *Platt* factors to the case at bar.

I.     Location of the Defendant

According to the indictment, Monahan is a real-estate developer who resided in the San Diego, California area.  It is undisputed that Monahan continues to reside in that area, where he has been released on bond.  The first factor clears weighs in favor of transfer.

II.   Location of Possible Witnesses

Monahan contends most of the witnesses who will be called to testify reside in the Southern District of California. Specifically, Monahan alleges nineteen individuals to whom he issued checks from the Newtrac bank account reside in California. Monahan also intends to interview Citibank employees from the San Diego branch that he and M.H. frequented.

The Government counters that the case agent and other law enforcement agents involved in this matter reside in the Eastern District of Louisiana. The Government also contends the victims of Monahan's crimes (presumably Bolivar) are located in this District. On balance, the Court finds this factor neutral.

III.   Location of Events

The situs of Monahan's unlawful activity is much disputed between the parties. It is clear the conduct alleged touched both the Eastern District of Louisiana and the Southern District of California. As to the former: (1) the Land is located in Louisiana; (2) the fraudulent misrepresentations that induced Bolivar (a Louisiana LLC) to invest money and form Newtrac (another Louisiana LLC) occurred primarily in Louisiana; (3) Bolivar's bank account from which money was forwarded to Newtrac is located in Louisiana; and (4) the fraudulently altered financial and bank statements of Newtrac were presumably received by Bolivar in Louisiana. The criminal activity alleged also has substantial contacts with California: (1) the Newtrac bank account into which Bolivar's funds were transferred was created and maintained in California; (2) Monahan

5

withdrew funds from the account while in California; and (3) the financial statements and bank statements of Newtrac were fraudulently altered in California. The Court finds this factor weighs slightly against transfer.

IV.   Location of Documents and Records

Monahan devotes two sentences to this factor in his brief and speculates that pertinent documents may be located in California. Such conjecture is insufficient for Monahan to carry his burden of proof. Moreover, as one court has noted, "the ease of modern transportation means that the location of relevant documents is not as influential today as in the past." *United States v. Cournoyer*, No. 12–CR–65, 2012 WL 6539659, at *7 (E.D. N.Y. Dec. 14, 2012). Accordingly, the Court finds this factor militates against transfer.

V.   Disruption of Monahan's Business

Whether a defendant's business will be disrupted is more significant in the prosecution of a corporate defendant. *Boyer*, 2008 WL 4104482, at *3. Accordingly, the Court finds this factor largely irrelevant and will not consider it here.

VI.   Expense to the Parties

Monahan has been adjudged indigent by this Court and currently resides in Coronado California—approximately 1800 miles from the courthouse in the Eastern District of Louisiana. Thus, requiring Monahan to defend this case in Louisiana would undoubtedly impose financial hardship. But Monahan is not likely to bear this hardship. Monahan's counsel is appointed by the

6

Government, and he has already once received authorization to have his transportation and subsistence costs paid for by the Government. Moreover, a trial in the Southern District of California would undoubtedly impose financial burdens on the Government. "Merely shifting the burden of expense from one party to another is not a good reason for transfer." *United States v. Kanner*, 2008 WL 2663414, at *7 (N.D. Iowa June 27, 2008). The Court finds that it will likely be more costly to fund trips for the prosecution team to California than it will to cover Monahan's travel expenses from California to Louisiana. In fact, Monahan can participate in certain court proceedings via videoconference—an option unavailable to the Government.[3] Accordingly, this factor does not support transfer. *See United States v. Logan*, No. 1:12cr506 (JCC), 2013 WL 145547, at *3 (E.D. Va. Apr. 4, 2013).

VII.   Location of Counsel

Counsel for the Government and Monahan are based in the Eastern District of Louisiana. This factors clearly weighs against transfer. *See id.* at *4; *Kanner*, 2008 WL 2663414, at *7.

VIII.   Relative Accessibility of Place of Trial

New Orleans is one of the most accessible cities in the United States, as evidenced by the city's substantial tourism industry. Moreover, counsel for both parties are located mere steps from the courthouse in the Eastern District of Louisiana. Accordingly, this factor weighs against transfer.

---

[3] For example, the Court previously approved a request by defense counsel for Monahan to observe oral argument via videoconference.

*See Logan*, 2013 WL 145547, at *4.

IX. <u>Docket Conditions</u>

Monahan has presented evidence tending to suggest that the caseload in the Southern District of California is lighter than that of the Eastern District of Louisiana. Monahan also notes that the average time from filing to disposition for criminal cases in the Southern District of California is 3.9 months (although he does not cite the corresponding figure for this District). Notwithstanding the foregoing, there can be little doubt that this case—currently set for trial on June 9, 2014—will reach disposition faster in this District than it would if transferred. Accordingly, the "docket conditions" factor weighs against transfer. *See United States v. Quinn*, 401 F. Supp. 2d 80, 89 (D.D.C 2005).

X. <u>Special Circumstances</u>

Monahan's counsel notes that the Federal Public Defender's Office for the Eastern District of Louisiana no longer employs any investigators. Thus, counsel are required to perform their own investigations. The Federal Public Defender's Office in San Diego, on the other hand, employs 16 investigators. This special circumstance weighs in favor of transfer.

8

**CONCLUSION**

Having thoroughly reviewed the *Platt* factors as applied to this case, the Court finds that only two of the ten (location of the defendant and "special circumstances") support transfer. The remaining factors weigh against transfer, except for the location of witnesses, which is neutral.[4] Accordingly, the Court finds Monahan has failed to carry his burden of demonstrating that transfer is warranted under Rule 21(b). The Motion is DENIED.

New Orleans, Louisiana, this 21st day of April, 2014.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[4] As discussed *supra*, the Court does not consider whether prosecution in this District would disrupt Monahan's business.